**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
(SOUTHERN DIVISION)**

**800 DC, LLC, D/B/A BIZZIE**,
and **1-800-DRYCLEAN**, a
Michigan limited liability company

            Plaintiff,                  Case No.

v.                                          Hon.

**LUXU CORP**., a New York corporation, and
**SUNG SHIN**, Jointly and Severally,

            Defendants.
_____/
KOSTOPOULOS RODRIGUEZ, PLLC
K. Dino Kostopoulos (P57071)
Elizabeth L. Sokol (P51288)
Attorneys for Plaintiffs
550 W. Merrill St., Ste 100
Birmingham, MI 48009
(248) 268-7800
dino@korolaw.com
liz@korolaw.com
_____/

**<u>COMPLAINT</u>**

        Plaintiff 800 DC, LLC, d/b/a Bizzie, and 1-800-DryClean ("Bizzie" or "1-800-DryClean"), by and through its attorneys, Kostopoulos Rodriguez, PLLC, states the following as its Complaint against the above-mentioned Defendants:

**SUMMARY OF THE ACTION**

1.      This is an action for breach of contract, trademark infringement, and unfair competition by 1-800-DryClean with respect to two (2) separate drycleaning pick-up and delivery franchises owned and operated by Defendants throughout the states of Arizona, California, Colorado, Connecticut,

District of Columbia, Florida, Georgia, Illinois, Indiana, Louisiana, Maryland, Massachusetts, New York, Michigan, Montana, Missouri, New Jersey, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin, pursuant to the terms of two (2) Franchise Agreements dated as of February 12, 2014, between 1-800-DryClean and Defendants (as amended, modified or supplemented from time to time, collectively, the "Franchise Agreements").

2.      This case arises from Defendants' multiple and repeated failures to comply with the terms of the Franchise Agreements, including but not limited to, (A) failing to timely pay royalties and other sums required under the Franchise Agreements; and (B) failing to comply with the post-termination obligations under the Franchise Agreements.

3.      Based on Defendants' breaches of contract, on January 20, 2015, 1-800-DryClean sent Defendants written notice that certain defaults have occurred under the Franchise Agreement (the "Notice").

4.      Defendants terminated the Franchise Agreements on November 9, 2015 (the "Termination Date") and elected not to renew the same pursuant to the terms thereof.

5.      Despite receiving the Notice and an opportunity to cure and other requests contained in the Notice, following the Termination Date, 1-800-DryClean has learned that Defendants are and continue to be engaged in the business of providing (or threatening to provide) drycleaning pick-up and delivery services in violation of the non-competition provisions contained in the Franchise Agreements.

6.     Defendants' failure to comply with the post-termination provisions of Section 14 of the Franchise Agreements constitutes a continuing breach of Defendants' contractual obligations under the Franchise Agreements.

7.     Defendants' continued use and enjoyment of the 1-800-DryClean trademarks and trade names outside the scope of the Franchise Agreements, as "holdover franchisees," is a violation of the Lanham Act, 15 U.S.C. §§ 1114 et. seq.

8.     1-800-DryClean seeks monetary, injunctive, and other relief against Defendants for the reasons set forth below.

**THE PARTIES**

9.     Plaintiff 800 DC, LLC, d/b/a Bizzie, and 1-800-DryClean, is a Michigan limited liability company with its principal place of business in Berkley, Michigan.  On July 9, 2012, 800 DC, LLC purchased substantially all of the assets of the 1-800-DryClean franchise system, including without limitation the Franchise Agreements and the 1-800-DryClean trademark, from the prior franchisor. 800 DC, LLC, d/b/a Bizzie, and 1-800-DryClean, is engaged in the business of franchising a drycleaning pick-up and delivery system throughout the United States.

10.    Defendant Luxu Corp., a New York corporation ("LUXU"), upon information and belief, has it its principal place of business located in City of Huntington, State of New York. LUXU was a 1-800-DryClean franchisee for the territory(ies) identified in the Franchise Agreements (collectively, the "Franchise Territory"), all in accordance with the terms of the Franchise Agreements, copies of which are attached hereto as Exhibits 1, 2 and 3, respectively, and incorporated herein by reference.  The Notice is attached hereto as Exhibit 4 and incorporated herein

3

by reference. The Franchise Agreement was terminated pursuant to a written notice provided by Defendants to 1-800-DryClean, a copy of which is attached hereto as Exhibit 5 and incorporated herein by reference.

11.     Defendant Sung Shin is a citizen and resident of the State of New York. Defendant Shin is, upon information and belief, a shareholder of LUXU and has aided, abetted, directed and controlled LUXU with respect to the wrongful conduct alleged herein. In addition, Defendant Shin has personally guaranteed the obligations of LUXU under the Franchise Agreements and related agreements.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This Court has jurisdiction pursuant to 15 U.S.C. §1121(action s arising under the Lanham Act, 15 U.S.C. §1051 et seq.), 28 U.S.C. §1331 (Federal question jurisdiction) and 28 U.S.C. §1338. It also has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. §1367.

14.     All Defendants are subject to the general personal jurisdiction of this Court under MCL §§600.701(3) and 600.711(2), because they have consented thereto by virtue of Section 21.3 of the Franchise Agreements, which reads:

### 21.3.   GOVERNING LAW.

This Agreement takes effect upon its acceptance and execution by Franchisor. This Agreement shall be interpreted and construed under the laws of the State of Michigan, which laws shall prevail in the event of any conflict of law, except to the extent governed by the Unidted

States Tademark Act of 1946 (Lanham Act, 15 U.S.C. Section 1051 et seq.). Any action brought by either party relating to this Agreement shall be brought in the appropriate state or federal court located in or serving the state and county (or parish) in which Franchisor maintains its principal business address at the time any dispute resolution proceeding is commenced by either party; provided, however, the Franchisor may, in the exercise of its reasonable business judgment, seek and obtain injunctive relief the state and county where Franchisee is located. The parties do hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). In addition, venue is proper

pursuant to a forum selection clause in the Franchise Agreements, which permits 1-800-DryClean

to bring this action in this Court.

## COMMON ALLEGATIONS

### 1-800-DryClean as a Franchisor and Licensor of the 1-800-DryClean Trademarks

16.     1-800-DryClean has developed, and owns a unique and valuable drycleaning pick-up and

delivery system and uses that system as the franchisor of the 1-800-DryClean franchise system.

17.     In connection with its drycleaning pick-up and delivery system, 1-800-DryClean has

registered certain trade and service marks, including without limitation "1-800-DryClean", "1-800-

DryClean We Deliver Quality & Convenience" and "Bizzie" which are Registration Nos. 3748305,

2779338, 2751936 and 4387329.  The registrations for each of these marks are in full force and

effect.

18.     1-800-DryClean has the exclusive right to use and license others to use its trade and service

marks 1-800-DryClean has used its trade and services marks continuously at all times relevant to

this action.

5

19.     Also in connection with its drycleaning pick-up and delivery system, 1-800-DryClean has developed and owns certain confidential and proprietary software, procedures, guidelines and other trade secrets.

20.     1-800-DryClean is in the business of, among other things, licensing the right to use its trade and service marks business system, and other proprietary materials and trade secrets, in the operation of approved 1-800-DryClean-franchised drycleaning pick-up and delivery businesses in designated territories throughout the United States, pursuant to franchise agreements under which 1-800-DryClean and/or Bizzie is the franchisor and licensor.

21.     1-800-DryClean spends considerable resources, time and effort on the development, promotion and servicing of the 1-800-DryClean business, including its trade and service marks, business system, and other proprietary materials and trade secrets.

22.     As a result of 1-800-DryClean's efforts and the use of the 1-800-DryClean trade and service marks in the operation of approved franchised businesses, the 1-800-DryClean marks have become well known to the public and have created substantial goodwill for 1-800-DryClean and its franchises.

23.     Also as a result of 1-800-DryClean's development efforts and efforts to maintain confidentiality, 1-800-DryClean's drycleaning pick-up and delivery system, business system and related proprietary materials and trade secrets derive substantial independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

**The Parties' Rights and Obligations under the Franchise Agreements**

24.    The Franchise Agreements each provide that Defendants were authorized to use 1-800-DryClean's marks, drycleaning pick-up and delivery system and other proprietary materials to enlarge the scope of their drycleaning pick-up and delivery business in the discrete geographic territory designated in the Franchise Agreements.

25.    During the term of the franchise, and, as a condition of their authority to use 1-800-DryClean's marks, drycleaning pick-up and delivery system and other proprietary materials, the Franchise Agreements required Defendants, among other things, to pay fees and royalties, advertising monies and other sums owed to 1-800-DryClean at a rate and terms set forth in the Franchise Agreements and to otherwise abide by the certain post-termination obligations upon termination of the Franchise Agreements. (Exhibits 1 & 2, Art. 14).

26.    Upon termination of the Franchise Agreements, the Franchise Agreements provide, in pertinent part, that Defendants must, among other obligations:

a.    Within seven (7) days of the effective date of termination or at any later date that the amounts due to 1-800-DryClean are determined, pay all sums owed to 1-800-DryClean under the Franchise Agreements, including all royalties on completed jobs, estimated royalties on jobs not yet paid, marketing and promotion fund fees, late payments, interest, actual and consequential damages, costs and expenses (including attorney's fees); (Exhibits 1 & 2, §14.1)

b.    Immediately cease use of the 1-800-DryClean Marks (as defined in the Franchise Agreements) and comply with other post-termination obligations set forth in Section 13(B) of the Franchise Agreements; (Exhibits 1 & 2, §14.1)

7

      c.   Abide by and observe the restrictions related to confidential information and competition for an identified period following termination. (Exhibits 1 & 2, §14.1).

27.    Pursuant to the Guaranty executed on February 12, 2014, a copy of which is attached hereto as Exhibit G within Exhibits 1 & 2 and incorporated by reference, the individual Defendant, Sung Shin, agreed to personally guarantee all of the franchisee's obligations under the respective Franchise Agreements.

### Defendants' Defaults under the Franchise Agreements

28.    Defendants breached the Franchise Agreements (and related agreements) in a number of ways, including but not limited to the conduct described below.

29.    The Notice requested that Defendants comply with their post-termination obligations as set forth in the Franchise Agreements following the Termination Date.

30.    To date, despite their clear contractual obligation to do so under the Franchise Agreements, Defendants have breached their post-termination obligations to pay 1-800-DryClean all outstanding fees, expenses and amounts due and owing under the Franchise Agreements in a timely manner.

31.    Defendants have further breached their contractual post-termination obligations under the Franchise Agreements by, among other reasons:

      a.   willfully and deliberately using 1-800-DryClean trademarks and trade names and drycleaning pick-up and delivery system without permission and on several new drycleaning pick-up and delivery jobs; (Exhibits 1 & 2, §14.1(k));

      b.   directly representing to the public that Defendants are still affiliated and/or connected to the 1-800-DryClean franchise system; (Id. at §14.1(h));

c.      holding themselves out as a present 1-800-DryClean franchisee; (Id. at §14.1(j));

d.      engaging in contacts with customers or former customers of 1-800-DryClean's Franchised Business (as defined in the Franchise Agreements) to provide them services, or for any other reason related to the Franchised Business; (Id. at §14.2);

e.      failing to assign any and all accounts receivables to 1-800-DryClean; (Id. at §14.1(k));

f.      operating or doing business under a name which might tend to give the general public the impression that Defendants are operating a 1-800-DryClean franchise, or any similar business; (Id. at §14.1(k));

g.      failing to take action to cancel all DBA's or equivalent registrations relating to use of the Marks; (Id. at §14.1(m) & (n));

h.      failing to deliver to 1-800-DryClean, within seven days of the Termination Date, a complete copy of all databases and information related to the Franchised Business (Id. at §14.1(o) & (p));

i.      failing to deliver to 1-800-DryClean, within seven days of the Termination Date, all Manuals (as defined in the Franchise Agreements), proprietary information, confidential material, proprietary software, signs, sign-faces, marketing and advertising materials, forms and other materials containing any Mark or otherwise identifying or relating to a 1-800-DryClean business, and allow 1-800-DryClean, without liability to Defendants or third parties, to remove all of these items from its place of business; (Id. at §14.1(o));

9

j.      failing to notify the telephone company and all telephone directory publishers of the transfer of Defendants' use of any telephone, telecopy, or other numbers and any telephone directory listings associated with any Mark, as provided for 1-800-DryClean in the Telephone Listing Agreement attached to the Franchise Agreement as Exhibit D. (Id. at §14.1(s)); and

k.      failing to deliver to 1-800-DryClean, within thirty days of the Termination Date, evidence that is satisfactory to 1-800-DryClean of your compliance with each of the foregoing obligations. (Id. at §14.1(v));

32.    Defendants have also breached their post-termination obligations under the Franchise Agreements by continuing to compete with 1-800-DryClean in violation of the non-competition provisions contained in the Franchise Agreements. Specifically, §14.2 of the Franchise Agreements states as follows:

> For a period of 24 months from the time of expiration or termination of this Agreement for any reason or in the case of a Transfer as provided in Article 12, you promise not to, either directly or indirectly, for yourself, or through or on behalf of, or in conjunction with any person, legal entity or other third party, engage as an owner, shareholder, partner, director, officer, employee, consultant, salesperson, representative, or agent or in any other capacity in any Competitive Business within:
>
> (a) The Franchise Territory;
>
> (b) The geographic area encompassed by the territories of any Bizzie franchisees as of the date of the termination or expiration of this Agreement; or
>
> (c) A geographic area that is contained in a circle having a radius of twenty (20) miles outward from the borders of the Franchise Territory. (Exhibits 1 & 2, §14.2.1).

10

33.     Section 14.1(f) of the Franchise Agreements contains similar non-compete obligations and provides in pertinent part:

> Upon the termination of expiration of this Agreement for any reason, Franchisee and Principal Owner agree to immediately do each of the following:
>
> > (f) Strictly comply with, observe, and abide by all of the provisions of the covenants not to compete as set forth in Article 14.2 herein; (Exhibits 1 & 2, §14.1(f)).

34.     On January 20, 2015, 1-800-DryClean sent Defendants the Notice advising Defendants that their conduct described herein was in violation of their obligations to 1-800-DryClean under the Franchise Agreements.  (Exhibit 4). On November 9, 2015, 1-800-DryClean sent Defendants a Notice of Termination. (Exhibit 5.)

35.     Despite receiving the Notice and an opportunity to cure and other requests contained in the Notice, as of the filing of this Complaint, Defendants are and continue to be (a) indebted to 1-800-DryClean in the amount of at least $6,593.27 under the terms of the Franchise Agreements (the "Outstanding Fee"), which such Outstanding Fee is described further in the Notice in Exhibit 5 (b) engaged in the business of providing (or threatening to provide) drycleaning pick-up and delivery services in violation of the non-competition provisions contained in the Franchise Agreements, and (c) using or displaying 1-800-DryClean's trademarks and/or tradenames in violation of the Franchise Agreements.

## COUNT I
## BREACH OF CONTRACT – FRANCHISE AGREEMENTS

36.     1-800-DryClean repeats and incorporates herein the allegations contained in paragraphs 1 through 35 above.

37.     Following termination of the Franchise Agreements, Defendants' conduct described in this Complaint constitutes a violation of Defendants' post-termination obligations under the Franchise Agreements, including without limitation the payment provisions of the Franchise Agreements cited herein, as well as the covenant not to compete contained in Section 14.2 of each of the Franchise Agreements.

38.     Indeed, Defendants are and continue to be, among other breaches, (a) operating and holding themselves out as a 1-800-DryClean franchisee by using and displaying 1-800-DryClean's trademarks and/or tradenames, including by failing to take action to cancel all DBA's or equivalent registrations relating to use of the Marks and failing to deliver to 1-800-DryClean, within thirty days of the Termination Date, evidence that is satisfactory to 1-800-DryClean of Defendants' compliance with its post-termination obligations under Section 14.1 of the Franchise Agreements, and (b) competing and engaging in a drycleaning pick-up and delivery business within the geographic area contemplated by Section 14.2 of the Franchise Agreements.

39.     Further, as of the date of this Complaint, Defendants owe 1-800-DryClean $6,593.27 in unpaid royalties and other fees due under the Franchise Agreements.

40.     Defendants' conduct as described in this Complaint constitutes a breach of their obligations under Sections 14.1 and 14.2 of each of the Franchise Agreements.

41.     Said breaches have caused, and will continue to cause, monetary damage to 1-800-DryClean in the form of lost business, lost profits, loss of customers and goodwill, damage to business reputation, the unjust enrichment of Defendants and 1-800-DryClean's inability to market Defendants' former Franchise Territory to new franchisees. Said damages well exceed $75,000

exclusive of interest and costs, and is not fully or adequately compensable by an award of monetary damages, as alleged elsewhere in this Complaint.

42.     In addition, said breaches, if they were to continue, create the immediate risk of irreparable harm to 1-800-DryClean which cannot be fully or adequately remedied by an award of money damages.  Simply put, to the full extent of 1-800-DryClean's lost business, lost profits, lost customers, lost goodwill, and damage to 1-800-DryClean's business reputation is difficult measurement, and by its nature cannot be fully and adequately remedied by an award of money damages.

43.     Defendant Sung Shin is personally liable to 1-800-DryClean for any and all amounts due to 1-800-DryClean from DCDS pursuant to the Guaranty.

44.     As a direct and proximate result of these actions, 1-800-DryClean has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

### COUNT II
### TRADEMARK INFRINGEMENT

45.     1-800-DryClean repeats and incorporates herein the allegations contained in paragraphs 1 through 44 above.

46.     The use in commerce of 1-800-DryClean's trademarks and trade names by Defendants outside the scope of the Franchise Agreements and following termination of the Franchise Agreements and without 1-800-DryClean's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by 1-800-DryClean. Such unauthorized use of 1-800-

DryClean's trademarks and trade names infringes exclusive rights in its trademarks under § 32 of the Lanham Act, 15 USC § 1114, and applicable state law.

47.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

48.     As a result of Defendants' actions, 1-800-DryClean has suffered and is continuing to suffer irreparable injury.

## COUNT III
## UNFAIR COMPETITION

49.     1-800-DryClean repeats and incorporates herein the allegations contained in paragraphs 1 through 48 above.

50.     The use in commerce of 1-800-DryClean's trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without the consent of 1-800-DryClean is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person.

51.     Such unauthorized use of 1-800-DryCleans's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

52.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

53.     As a result of Defendants' actions, 1-800-DryClean has suffered and is continuing to suffer irreparable injury.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

54.     1-800-DryClean repeats and incorporates herein the allegations contained in paragraphs 1 through 53 above.

55.     The actions listed above on the part of Defendants in soliciting, inducing and/or otherwise engaging in contacts with customers or former customers of 1-800-DryClean's Franchised Business to provide them services, or for any other reason related to the Franchised Business, constitutes tortious interference with contractual relations between 1-800-DryClean and its customers.  The Franchise Agreements make clear that 1-800-DryClean owns any and all customer lists and their contents that Defendants may develop during the normal course of operating the Franchised Business. (Exhibits 1 & 2, §9.2).

56.     The business relationships and expectancies had a reasonable likelihood of future economic benefit for 1-800-DryClean.

57.     Defendants knew of the business relationships and expectancies between 1-800-DryClean and the customers or former customers of 1-800-DryClean's Franchised Business.

58.     By its conduct, Defendants intentionally and improperly interfered with the contracts and business relationships and expectancies between 1-800-DryClean and its customers.

59.     As a direct and proximate result of this wrongful interference, 1-800-DryClean has suffered damages that were reasonably foreseeable by Defendants, including lost profits.

**PRAYER FOR RELIEF**

WHEREFORE, 1-800-DryClean prays that this Court:

1.      Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreements;

2.      Enter judgment in favor of 1-800-DryClean for the damages suffered following the termination of the Franchise Agreements, including but not limited to all lost future profits and reasonable attorneys' fees;

3.      Enter judgment in favor of 1-800-DryClean in the amount of $6,593.27 for amounts due and owing under the Franchise Agreements and any other agreements between the parties, including interest and late fees;

4.      Enter an order enjoining Defendants, and all those acting in concert with them, by preliminary and permanent injunction, from using the 1-800-DryClean trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with 1-800-DryClean;

5.      Enter an injunctive order directing Defendants to comply with all of their post-termination obligations as provided in Article 14 of the Franchise Agreements, including but not limited to complying with the covenants not to compete contained in the Franchise Agreements;

6.      Award 1-800-DryClean its costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreements and § 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all necessary inspections; and

7.      Award 1-800-DryClean such other and further relief that the Court deems just and equitable.

16

Respectfully Submitted,

**KOSTOPOULOS RODRIGUEZ, PLLC**

/s/ K. Dino Kostopoulos
K. Dino Kostopoulos (P57071)
Elizabeth L. Sokol (P51288)
Attorneys for Plaintiffs
550 W. Merrill St., Ste 100
Birmingham, MI 48009
(248) 268-7800

Dated: December 14, 2015

17